PAUL J. DeVINE and FANNY K. DeVINE, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
De Vine v. Commissioner
Docket No. 3867-74.
United States Tax Court
T.C. Memo 1976-8; 1976 Tax Ct. Memo LEXIS 395; 35 T.C.M. (CCH) 23; T.C.M. (RIA) 760008; January 8, 1976, Filed Paul J. DeVine, pro se. James E. Dunn, Jr., for the respondent. SCOTT MEMORANDUM FINDINGS OF FACT AND OPINION SCOTT, Judge: Respondent determined a deficiency in Federal income tax of petitioners, Paul J. and Fanny K. DeVine, for the calendar year 1972 in the amount of $760.53. The issue for decision is whether petitioners may deduct amounts in excess of those allowed by respondent for business expenses under section 162, I.R.C. 1954, [1] for medical expenses under section 213, for charitable contributions under section 170 and for a casualty loss under section 165. FINDINGS OF FACT Paul J. DeVine and Fanny K. DeVine were residents of Findlay, Ohio at the time of the filing of their petition in this case. They filed their *397 joint Federal income tax return for the calendar year 1972 with the District Director of Internal Revenue, Cleveland, Ohio. From January 1, 1972 through November 30, 1972, petitioners resided in LaGrange Park, Illinois. Petitioner, Paul J. DeVine (hereinafter Paul), purchased a topcoat for $125. Sometime thereafter, Paul took a customer to lunch at a restaurant and while they were having lunch, his topcoat disappeared from the cloakroom where he had left it. The value of his coat was less than $100 at the time of its disappearance. Paul attended church weekly and made cash donations of approximately $2 each Sunday. During special holy weeks he would donate approximately $5 each Sunday. Fanny K. DeVine (hereinafter Fanny) attended church several times each week and gave donations on her own account. Paul made some cash contributions to organizations such as Red Cross, Kiwanis and the Girl Scouts when he was personally asked for such a donation. During 1972 petitioners paid $19 to a local hospital for services rendered to Paul. During 1971 petitioners paid approximately $140 for medical services rendered to Fanny while she was in Germany. Paul had $5.50 deducted from his payroll *398 check by his employer, Swift Chemical Company, for each week during 1972 for hospitalization insurance. Paul visisted the dentist twice and Fanny three times during 1972. For his visits Paul paid an aggregate amount of $16 to their family dentist and for her visits Fanny paid $74 to the same dentist. Paul purchasd three pairs of eye glasses and Fanny purchased one pair of glasses in 1972 at a total cost of $88. In 1972 Paul purchased three elastic braces and a number of elastic bandages and paid therefor the aggregate amounts of $46 and $19, respectively. Fanny at times used a taxicab to go to her medical appointments. Paul or Fanny, depending on who went to the store, purchased and paid for vitamins that were prescribed for Fanny. Paul was employed during 1972 as a salesman for Swift Chemical Company selling adhesive and chemical products. He used one room of his 4-room apartment as an office. This room was for no purpose other than as Paul's office. Paul paid $180.50 per month from January 1, 1972 through November 30, 1972, for rent of his apartment in LaGrange Park, Illinois. In addition, he paid $97.56 for electricity and $15.40 for gas for the apartment during this period. The *399 monthly service charge for the telephone installed in his apartment was $5.65 and Paul paid approximately $71 for the use of a telephone for local calls at the LaGrange Park apartment for the period petitioners resided there. In 1972 Paul paid a total of $450 for weekly cleaning of the apartment and $90 for household insurance. The furnishings used by Paul in his office accounted for 20 percent of the total value of the furnishings in the apartment. For use in his business as a salesman, Paul purchased notebooks, pens and paper, books concerning chemicals and adhesives, a brief case for $70 (which was damaged during the year to such an extent that it became unusable), safety equipment for his car, travel insurance, safety glasses, and a smock. He also bought a pair of sunglasses which he used for both business and personal driving. On petitioners' joint Federal income tax return for the calendar year 1972 they deducted the amount of $1,359 for total miscellaneous deductions of which the amount of $10 was for a safe deposit box and the following amounts were claimed to be attributable to Paul's work as a salesman: Miscellaneous (notebooks,
paper, pens, etc.)
$ 150
Books
75
Brief Case
70
Travel Insurance
155
Safety Equipment for Car
40
Safety Glasses
38
Sunglasses for Driving
25
Smock
16
$ 569
Apartment-Office
Apartment Rent
$2,364
Utilities
132
Phone
84
Cleaning
450
Insurance
90
$3,120
1/4 X $3,120
780
$1,349
*400 Petitioners additionally deducted on their joint Federal income tax return the amount of $1,731.79 for business expenses of Fanny; the amount $565of for contributions; the amount of $85 for a theft loss; and the amount of $661.56 for medical and dental expenses which were computed on the basis of the following expenditures: Health Insurance $316
Medicine & Drugs
365
Medical Expenses
140
Dental Expenses
90
Eye Glasses
88
Ace Bandages
18
Body Braces
46
Transportation
40 Petitioners also excluded from gross income the amount of $450 for "sick pay." Respondent in his notice of deficiency disallowed the total amount of Fanny's claimed business expenses; all of the miscellaneous deductions, except the $10 for the safe deposit box, and $300 of Paul's claimed business expenses composed of $50 for notebooks, papers, pens, et cetera, $40 for safety equipment, $38 for safety glasses, $16 for a smock and $156 for apartment-office expenses; all of the claimed medical expenses except $150; all of the claimed charitable contributions except $78; and the casualty loss. Respondent determined that petitioners were not entitled to an exclusion of $450 under section *401 105. OPINION Respondent's position is that petitioners have failed to substantiate any amounts of expenditures and charitable contributions in excess of the amounts he has allowed and that under section 165 petitioners are not entitled to a casualty loss. Petitioners concede that they are not entitled to an exclusion under section 105 from gross income for compensation received during the period of Paul's illness. Section 162(a) allows a deduction for all the ordinary and necessary expenses paid during the taxable year in carrying on any trade or business. In order for petitioners to be entitled to a deduction under this section greater than that allowed by respondent, they must show that the amounts of the claimed expenditures were made and that the expenditures were made for a business purpose. This record is devoid of evidence with respect to the amount of any expenditures made relating to any business in which Fanny might have engaged. Therefore, we conclude that petitioners are not entitled to deduct any amount as expense of any business conducted by Fanny. We sustain respondent's disallowance of the amount of $1,731.79 claimed by petitioners as business expenditures of *402 Fanny's business. Although the record is not completely clear, we conclude that Paul paid rent on the apartment in which he and Fanny resided in LaGrange Park for the first eleven months of 1972 in the amount of $1,985.50 and in addition paid the amount of approximately $113 for utilities used in this apartment during this period. He also paid $450 for having the apartment cleaned. Petitioners paid household insurance of $90 of which 20 percent was attributable to the furnishings of Paul's office. Approximately 25 percent of the floor space in petitioners' apartment was attributable to the office used by Paul. Paul's use of an office in his business activity as a salesman was a helpful, appropriate and usual business expenditure. We, therefore, conclude that petitioners are entitled to deduct under section 162(a) the amount of $673 for expenses of maintaining an office at home for Paul's use including the cost of use of the telephone in lieu of the $156 allowed by respondent. Respondent did not disallow deductions for amounts petitioners claimed as deductible business expense for safety equipment, safety glasses, and a smock. Respondent allowed $50 of the amount petitioners claimed *403 to be deductible for notebooks, paper and pens. We have found that petitioners purchased notebooks, paper and pens. However, petitioners have not established the amount actually paid for such articles. In our view the amount allowed by respondent is a reasonable approximation of the amount petitioners expended for notebooks, paper and pens and therefore we hold that petitioners are not entitled to deduct any amount for this expenditure in excess of the amount allowed by respondent. There is no evidence in this record from which we can approximate the cost of the books bought by Paul or determine whether these books were of a type to be properly considered as related to Paul's business. While the evidence as to the purchase of a brief case is sketchy, we conclude on the basis of this record that petitioners did expend $70 in 1972 for a brief case and they may properly deduct this amount under section 162. Petitioners have not shown that any amount was paid for sunglasses for Paul and in any event the amount, if any, paid for sunglasses is not a proper deduction under section 162 as, notwithstanding that Paul wore the sunglasses for driving during the pursuit of his business, such expenditure *404 was a personal expense. See Donald W. Fausner,T.C. Memo. 1971-277, affd. per curiam 472 F. 2d 561 (5th Cir. 1973). We conclude that respondent properly disallowed the amount claimed by petitioners to be deductible for travel insurance since petitioners have not shown that this amount was paid for such insurance or that such insurance was an ordinary and necessary business expense for either of them. Respondent has allowed a deduction of $150 under section 213(a)(2) for expenses paid by petitioners during the taxable year for insurance for medical care. Section 213(a)(1) provides generally that there shall be allowed a deduction for amounts of medical expenses not compensated by insurance paid during the taxable year (reduced by any amount deductible under section 213(a)(2)) for medical care for the taxpayer or his spouse in excess of 3 percent of his adjusted gross income. A deduction is allowable only with respect to medical expenses actually paid during the taxable year. Section 1.213-1(a)(1), Income Tax Regs. Consequently, petitioners are not entitled to any deduction in the calendar year 1972 for medical expenses incurred and paid by Fanny while *405 she was in Germany in 1971. The evidence shows a payment by petitioners in the calendar year 1972 of $286 for health insurance. However, from respondent's concession that one-half of petitioners' payments for health insurance was not less than $150 deductible under section 213(a)(2), we consider this to be a concession that petitioners' total payment for health insurance was at least $300. We, therefore, hold that petitioners are entitled to include $150 for insurance for medical care as a part of their medical expense under section 213(a)(1). Petitioners paid the amount of $19 for hospital treatment of Paul, $90 for dental care for Paul and Fanny, $88 for glasses, and $65 for elastic bandages, all of which are includable as medical expenses under section 213(a)(1). Petitioners paid for vitamins prescribed by a doctor for Fanny but have not shown the amount of this payment. We have no basis to make an estimate of the amount paid for such vitamins. Fanny paid for her transportation by taxicab to her dental appointments but petitioners have not shown the actual amount she paid nor produced evidence from which we can reasonably approximate the amount of such expense. We conclude that *406 petitioners are entitled to deduct under section 213(a)(1) the amount of $412 to the extent it is in excess of 3 percent of their adjusted gross income. Section 170 generally allows a deduction of any charitable contribution that is paid by a taxpayer within the taxable year. Petitioners presented no evidence of the amounts they claimed to have paid to such organizations as Kiwanis, Red Cross or the Girl Scouts, and there is no basis in the evidence from which we can reasonably estimate the amounts of such contributions. The evidence shows that Paul gave cash contributions of $2 each week and of $5 during those weeks that had particularly religious significance to him to the Catholic Church and that Fanny gave some amount of cash contributions to the church. Based on the evidence, we conclude that petitioners made contributions to their church of approximately $3 per week and therefore hold that petitioners are entitled to deduct $156 under section 170 for charitable contributions to their church. Petitioners contend that they are entitled to deduct the amount of $85 as a theft loss under section 165(a) and (b). Petitioners contend that the $85 was the value of a topcoat which *407 was stolen from Paul and that the loss was incurred in Paul's trade or business. Respondent's position is that petitioners are not entitled to a deduction under section 165(a) as the amount of petitioners' loss was not in excess of the limitation of $100 provided for losses of property not connected with an individual taxpayer's trade or business under section 165(c)(3). We conclude that petitioners have not shown that they sustained any theft loss in the calendar year 1972. See section 1.165-1(d)(2), Income Tax Regs. Assuming arguendo a theft occurred, the record does not show the theft occurred in the calendar year 1972 and, if it occurred in 1972, there was no prospect at that time for recovery by insurance or otherwise and that there has been no compensation for the theft loss. Consequently, we conclude petitioners are not entitled to deduct any amount for the calendar year 1972 for the alleged theft of Paul's topcoat. In any event a topcoat that is not distinctive in appearance but suitable for general ordinary wear and not specifically required as a condition of employment is personal property and not business property. Louis M. Roth,17 T.C. 1450, 1455 (1952). *408 Therefore, if petitioners sustained a loss from the theft of Paul's topcoat in 1972, the value of the personal property which was lost did not exceed the limitation of $100 applicable under section 165(c)(3) to property not used in a trade or business or for income-producing purposes. We, therefore, hold that petitioners are not entitled to any deduction under section 165 for the loss of Paul's topcoat. Decision will be entered under Rule 155.
Footnotes
1. All references are to the Internal Revenue Code of 1954, as amended.↩